LEGGAT, ADMINISTRATOR, ETC., RESPONDENT, *v.* PALMER, APPELLANT.

(No. 2,664.)

(Submitted June 12, 1909. Decided June 22, 1909.)

[102 Pac. 327.]

*Interest—Deposit—Principal and Surety—Evidence—Pleadings —Amendments During Trial—Complaint—Prayer, No Part of.*

Principal and Surety—Deposit—Interest—Evidence.
1.   Where, in an action for interest on a sum deposited in a bank to indemnify defendants against loss as sureties on a *supersedeas* bond, it appeared that a smelting company was indebted to plaintiff, that the sum so due was deposited to the credit of defendants to be held by them until exonerated from liability under the bond, and that the liability was discharged, evidence that neither the company nor its receiver ever claimed any interest on the deposit was admissible as confirmatory of plaintiff's title to the amount on deposit and the interest accruing thereon.

Pleadings—Amendments During Trial.
2.   Amendments during trial, to pleadings which do not change the nature of the action or mislead the adversary party to his prejudice are proper.

Complaint—Prayer, No Part of—Amendments—Judgment.
3.   The prayer is no part of the complaint and cannot be looked to to find support for the judgment; hence, the allowance of an amendment to the prayer asking for a larger sum than could be found due under the allegations of the complaint, did not authorize judgment for the greater amount.

Principal and Surety—Deposit—Pledge—Interest.
4.   A deposit in a bank to indemnify sureties on a bond against possible loss is a pledge within the definition of section 5774, Revised Codes; title to it, as between the principal and the sureties, is in the former, and any interest accruing thereon belongs to him and not to the sureties.

Same.

5.   Section 6046, Revised Codes, providing that acceptance of payment of the principal waives all claim to interest, has no application to moneys deposited to indemnify sureties on a bond against loss.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Alexander Leggat, administrator of John A. Leggat, deceased, against C. H. Palmer and another. From a judgment for plaintiff, defendant C. H. Palmer appeals. Modified and affirmed.

*Mr. Chas. R. Leonard,* and *Mr. Chas. A. Ruggles,* for Appellant.

It is universally the law that even in the liberal Code states, the rule allowing amendments to pleadings does not go so far as to allow the party to discard the cause of action with which he commenced his proceedings, and to substitute a new and different cause of action. It is held that the court may, at the trial, or before the case is submitted, allow an amendment to conform the pleading to the fact, if no substantial change in the claim or defense is worked thereby. (*Wormall* v. *Reins,* 1 Mont. 627; *Hershfield* v. *Aiken,* 3 Mont. 443; *Ramsey* v. *Cortland Cattle Co.,* 6 Mont. 499, 13 Pac. 247; *Williston* v. *Camp,* 9 Mont. 89, 22 Pac. 501; see, also, *Ford* v. *Ford,* 53 Barb. 525.)   The point is exhaustively discussed in a note to the case of *Stevenson* v. *Mudgett,* 10 N. H. 338, 34 Am. Dec., at p. 158.

Parties in the position of the defendants, holding the money as mere stakeholders are not liable for such interest as they received on the fund. (*Jones* v. *Mallory,* 22 Conn. 386; see, also, *Williams* v. *Baxter,* Fed. Cas. No. 17,715, 3 McLean, 471.)

In *Ruckman* v. *Pitcher,* 13 Barb. 556, it was held that while money paid to a stakeholder does not draw interest, interest may be recovered from the commencement of the suit as damages for its detention.

Under section 6046, Revised Codes, interest was waived. (*Valentine* v. *Donohue-Kelly Bank,* 133 Cal. 194, 65 Pac. 381; *City of Los Angeles* v. *City Bank,* 100 Cal. 22, 34 Pac. 510.)

*Messrs. Kirk, Bourquin & Kirk,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff, as administrator of the estate of John A. Leggat, deceased, to recover moneys alleged to have been received by defendants as interest upon the sum of $4,000, deposited with them by the said Leggat during his lifetime, to indemnify them against loss as his sureties upon a *supersedeas* bond. The purpose of the bond was to secure a stay of execution upon a judgment for the plaintiff on the first of the several appeals in the case of *Harrington* v. *Butte & Boston Min. Co. et al.,* upon the last of which a judgment in favor of plaintiff was affirmed by this court on June 24, 1907. (35 Mont. 530, 90 Pac. 748.) This judgment was afterward paid by the plaintiff herein. An understanding of the controversy involved in that case may be had by reference to the statement preceding the opinion reported in 19 Mont. 411, 48 Pac. 758. The first appeal in the case was taken on December 12, 1895. At that time the Butte & Boston Mining Company was indebted to its codefendant, John A. Leggat, on account of ores sold and delivered to it by him, to an amount in excess of $4,000. The defendants herein, being officers of the company, became sureties on the *supersedeas* bond. In order that they might be secured against loss in case the judgment should be affirmed, and also that the company might be secured against any contingent liability on any judgment finally recovered in the action, it was agreed by Leggat that $4,000 of the amount due him from the company should be deposited by it in the State Savings Bank, at Butte, to the credit of the defendants, and be held by them until the termination of the controversy. The arrangement was completed by a deposit of the amount in the bank, and the issuance by it of a certificate to the defendants jointly, bearing interest at the rate of four per cent per annum. There was no stipulation in the agreement requiring the defendants to put the money at interest, or as to what disposition should be made

of any interest received. The amount due from the company to Leggat, in excess of $4,000, was then paid to him by the company, and his account upon its books was closed. Though the judgment was reversed on April 26, 1897, and the defendants were exonerated from liability, they retained the deposit intact under the original arrangement, until March 10, 1898. On that date, by consent of the receiver of the company, the defendants paid to Leggat $400, retaining the.balance on deposit as before. Leggat died on October 12, 1903. By consent of the receiver of the company, the plaintiff having furnished him other satisfactory indemnity, the defendants made payments to plaintiff, as follows: On November 28, 1903, $500, on January 27, 1904, $1,850, and on May 3, 1904, $1,250. A demand was made upon the defendants for the interest, but the demand was refused. Hence this action.

The complaint alleges that the defendants held the money on deposit from July 27, 1897, and continued to receive interest thereon at the rate of four per cent per annum from that date until March 10, 1898, when the payment of $400 was made to Leggat, and that from that date until November 28, 1903, they continued to receive interest at the same rate upon the balance of $3,600, and judgment is demanded for $924.30. The cause was submitted to the court without a jury. Judgment was rendered for plaintiff for $1,209.17. Defendant Palmer has appealed from the judgment and an order denying his motion for a new trial.

1. Though a considerable portion of appellant's brief is devoted to a discussion of rulings of the court upon the admissibility of certain items of evidence, we do not think any of the contentions in this behalf of sufficient merit to demand special notice. We find no error in any of them. For illustration: The witness Forbis, who was attorney for the company at the time the deposit was made, and afterward its receiver, and who had personal knowledge of the account of Leggat and the arrangement for indemnity against loss on the bond, was permitted to state, in substance, that neither the company, nor he as its re-

ceiver, ever made any claim to interest accruing on the deposit. It is said that it was wholly immaterial whether any such claim was made or not. While the evidence was not of a great substantial value, yet, in view of the testimony already given by the witness, tending clearly to establish the fact that the deposit was regarded by all the parties as a payment to Leggat of the balance due on his account, subject only to the lien of the company and the defendants for their indemnity, the omission of any such claim by the company or the receiver was confirmatory of Leggat's title to the amount of the deposit, and hence to the interest accruing thereon.

2. The plaintiff was permitted to testify that he had learned, during the course of the trial, that the defendants had received interest on the deposit from December 12, 1895, instead of July 27, 1897, as alleged in the complaint, and that upon a calculation of the interest from the former date he had found that the amount received by them was $1,209.17. This evidence was objected to as immaterial and irrelevant, because it had reference to a claim without the issues made by the pleadings. The objection was overruled. Thereupon counsel for plaintiff asked leave to amend the prayer of the complaint by inserting therein this latter amount, instead of $924.30. Counsel stated: "We are willing that this application should be submitted to the court when we submit the case." Objection was made by the defendants that nothing appeared to justify the amendment, and that, in any event, the evidence having been admitted over objection, the court could not permit the amendment in order to make the complaint conform to the proof. The court overruled the objection; but, so far as the record shows, the amendment was never made, though judgment was rendered for the larger amount. Invoking the rule that an amendment will in no case be permitted in order to make the pleadings conform to the proof, when the evidence tending to establish the matter with reference to which the amendment is sought has been admitted over objection (*Mendenhall* v. *Harrisburg Water Co.*, 27 Or. 38, 39 Pac. 399), counsel contend that the amendment should not have been

allowed. · Under the statute, to allow amendments is the rule; to deny them is the exception. The rule observed by this court has always been to allow them with great liberality, where they do not change the nature of the action, or mislead the adversary party to his prejudice; its application going even to the extent of permitting them after verdict and judgment. (*Wormall* v. *Reins,* 1 Mont. 627; *Hershfield & Bro.* v. *Aiken,* 3 Mont. 442; *Williston* v. *Camp,* 9 Mont. 88, 22 Pac. 501; *Merrill* v. *Miller,* 28 Mont. 134, 72 Pac. 423; *Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609.) From the record before us, however, it does not appear that any amendment was in fact made. The court seems to have granted leave to amend the demand for judgment, and to have assumed, in rendering judgment, that the amendment had been made. This in no wise changed the allegations of the complaint, to which alone we may look to see whether the judgment rendered is the proper one. The prayer is no part of the pleading, and cannot be looked to to find support for the judgment. Therefore, accepting the rule contended for by appellant as correct, it cannot aid him, because it has no application. The particular wherein the court erred was that it assumed that an amendment to the prayer would authorize judgment for a sum greater than could be found due under the allegations of the complaint. Even though, if the application had been to amend the complaint by substituting the earlier date instead of one alleged to fix the amount of the recovery, we might otherwise have presumed that the amendment had actually been made, yet, in view of the statement made by counsel, and the silence of the record as to any action by the court thereon afterward, we may not indulge any presumption on the subject. Judgment should have been rendered for the amount due under the allegations of the complaint. To the extent, then, that the judgment exceeds the amount justified by the allegations of the complaint, it is erroneous.

3. Counsel argue that it may be conceded that the money, when deposited to the credit of the defendants, belonged to John A. Leggat, yet, since it appeared from the evidence that it was

returned to him, or to plaintiff, his representative, as soon as he had a right to its return, and demand was made for it, the finding in favor of plaintiff is erroneous. In support of this argument they cite section 5140, Revised Codes, which provides: "A depositary is not bound to deliver a thing deposited without demand, even where the deposit is made for a specified time." It is said that under this provision the defendants may not be charged with interest, except upon proof of a demand for a return of the principal sum of the deposit, and a refusal to return it, and then only from the date of the demand. The provision has no application. It refers only to the obligation resting upon the depositary to deliver. The deposit here was a pledge within the definition laid down in section 5774, Revised Codes. The money was by agreement deposited with the defendants, or, what amounts to the same thing, with the bank to their credit, to be held until judgment against Leggat and the company was reversed, and until the company was finally discharged from liability. Neither Leggat nor his representative had a right to demand a return of it until the end of the litigation, and the company was discharged by payment by Leggat of any judgment against him. In the meantime the defendants were not only not obliged to invest the deposit profitably, but they were not entitled to do so. If they had undertaken to withdraw it from the bank, and so invest it, they would have assumed the risk of its safekeeping. Their whole duty would have been discharged if they had made a special deposit of it, or, in the absence of a stipulation that it should be deposited in the bank, by locking it up in a safety vault. Since it was a pledge, the title to it, as between defendants and Leggat, was in Leggat, and not in them, and the accretions or profits, if any, belonged to him as the owner, and not to them. (Revised Codes, sec. 4472.) In 31 Cyc., at page 825, the rule applicable is stated thus: "The pledgee must account to the pledgor for all the income, profits, and advantages derived by him from the pledged property. Such profits or income should be applied, first to the payment of the interest on the debt, then to the principal, and any surplus

remaining from such profits, income, or advantages so derived by the pledgee from the pledged property is held for the pledgor.'' So the rule is declared by the authorities generally. (Story on Bailments, sec. 331; Schouler on Bailments and Carriers, 3d ed., sec. 212; *Houton* v. *Holliday*, 6 N. C. 111, 5 Am. Dec. 522; *Hunsaker* v. *Sturgis*, 29 Cal. 142; *Geron* v. *Geron*, 15 Ala. 558, 50 Am. Dec. 143; *Gilson* v. *Martin*, 49 Vt. 474.)

Finally it is said that, since it appears from the evidence that the plaintiff received at different times the principal sum of the deposit as such, he waived the payment of interest. Section 6046 of the Revised Codes is cited in support of this contention. There would be merit in the contention were it shown by the evidence that the defendants occupied the position of simple debtors for the amount of the deposit. The evidence does not justify any such inference.

The order denying a new trial is affirmed. The cause is remanded to the district court, with direction to modify the judgment by striking out so much thereof as is in excess of $924.30, and, when so modified, it will stand affirmed.

*Modified and affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.